UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MITCHELL G. VARNADO | CIVIL ACTION |
| VERSUS | NO. 25-1718 |
| LYND MANAGEMENT GROUP ET AL. | DIVISION (3) |

## ORDER AND REASONS

Defendants Derrick Williams and Lynd Management Group ("LMG") have filed a Motion to Dismiss (R. Doc. 44) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Pro se* Plaintiff Mitchell G. Varnado opposes the motion.[1] Having considered the submissions of counsel, the record, and the applicable law, the Motion is granted without prejudice to Plaintiff's right to amend certain claims as stated herein.

## I.    Background

Plaintiff is a white male[2] who rented an apartment in Carmel Brook Apartments, an apartment complex owned by LMG.[3] Plaintiff alleges that, in mid-August 2023, LMG denied his housing application because he failed a background check.[4] Plaintiff requested housing from LMG again on August 28, 2023.[5] Two days

---

[1] R. Doc. 48.
[2] R. Doc. 16 at 10.
[3] *Id*. at 3.
[4] *Id*.
[5] *Id*. at 4.

later, he received permission to move into an apartment.[6] Plaintiff alleges that he was informed he need not pay rent or utility fees until LMG communicated the rent total.[7]

Plaintiff moved in on September 1, 2023.[8] According to Plaintiff, on September 5, 2023, he had an encounter during which Williams (the head supervisor and property manager of LMG) poked him in the arm and stated, "Y'all get all the breaks."[9] Plaintiff alleges that this comment had "nothing to do with my arm. It was about the color of my arm. Plain and simple."[10]  Construed generously and in Plaintiff's favor, his allegations indicate that he relies on this interaction as evidence of Williams' alleged race-based animus.

On December 28, 2023, Plaintiff became employed by LMG as a plumber for the apartment complex.[11] That same day, Plaintiff was handed an envelope by Williams which contained a notice to vacate his apartment by January 8, 2024.[12] Plaintiff reported the notice to LMG management.[13] Later that evening, Plaintiff received a phone call from an unknown individual who told Plaintiff not to trust Williams and to flush the notice down the toilet.[14]

---

[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.* at 7.
[10] *Id.*
[11] *Id.* at 5.
[12] *Id.* at 6.
[13] *Id.*
[14] *Id.*

Plaintiff also alleges that Williams denied him the opportunity to work "on call" and earn additional income, while providing that same opportunity to each of Plaintiff's three "coworkers," "who were all of a different race/color."[15]

Plaintiff also alleges that he was initially not paid for work performed on December 29, 2023, and January 2, 2024, to repair plumbing.[16] According to Plaintiff, he did not have access to the time clock, which Williams was aware of.[17] Williams allegedly stated that he did not turn in Plaintiff's time because he had not paid rent in four months.[18] In his opposition, Plaintiff concedes that he was paid for this time, however, after LMG's HR Director was notified of the issue.[19]

On January 17, 2024, Varnado received a lease for that same year, as well as an addendum validating his September 2023 move-in date.[20]

On February 23, 2025, Plaintiff soiled himself and stopped by his apartment during his shift.[21] Plaintiff answered a knock on his door from Williams, who was accompanied by a young woman.[22] According to Plaintiff, the woman asked Williams why he would hire "that white man."[23] Williams stated that he did not know and it

---

[15] *Id*. at 8.
[16] *Id*. at 8–9.
[17] *Id*. at 9.
[18] *Id*.
[19] R. Doc. 48 at 4.
[20]
[21] *Id*.
[22] *Id*. at 10.
[23] *Id*.

3

was not his idea.[24] Another resident who overheard the conversation expressed that "we don't all feel that way," to which Williams responded, "speak for yourself."[25] On February 26, 2024, Williams verbally warned Plaintiff that it was against LMG policy to visit his residence while working.[26] In March 2024, Plaintiff received a thirty-day notice to vacate his apartment for failure to pay rent[27] and an employment termination write-up for accessing another tenant's apartment during a service request.[28] Defendants issued a notice to Plaintiff that his lease would not be renewed for 2026.[29]

Plaintiff filed this lawsuit on August 18, 2025[30] and amended his complaint on December 10, 2025.[31] With respect to his employment by LMG, Plaintiff alleges claims of wrongful termination, retaliation, and hostile work environment. With respect to his status as an LMG resident, Plaintiff alleges claims of housing discrimination. Finally, Plaintiff alleges a fraud claim relative to alleged conduct that occurred in connection with the EEOC proceeding.

---

[24] *Id.*
[25] *Id.*
[26] *Id.* at 11.
[27] *Id.* at 12.
[28] *Id.*
[29] *Id.*
[30] R. Doc. 1.
[31] R. Doc. 16.

## II.   Standard of Law

### A.   Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Dismissal is appropriate when a plaintiff has not pleaded enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### B.   Title VII and Section 1981

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating against any individual with respect to compensation, terms, conditions, or privileges of employment because of the individual's race. 42 U.S.C. § 2000e-2(a)(1). "Among the many statutes that combat racial discrimination, § 1981, originally § 1 of the Civil Rights Act of 1866, 14 Stat. 27, has a specific function: It protects the equal right of '[a]ll persons within the jurisdiction of the United States' to 'make and enforce contracts' without respect to race." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474–75 (2006) (quoting 42 U.S.C. § 1981(a)). "'The analysis of discrimination claims under § 1981 is identical to the analysis of Title VII claims,' so the claims are analyzed together." *Brenyah v. Columbia Hosp. Corp. of Bay Area*,

No. 25-40200, 2026 WL 1836369, at *3 (5th Cir. June 23, 2026) (citing *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017)). The plaintiff must plead sufficient facts on all the ultimate elements to make his claim plausible. *See Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) (citations omitted). A plaintiff need not, however, establish a prima facie case of employment discrimination under the *McDonnell Douglas* framework to survive a 12(b)(6) motion to dismiss. *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 510 (2002); *Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019).

## III.   Analysis

### A.   Plaintiff's Title VII claims Derrick Williams fail as a matter of law.

Plaintiff's Title VII claims against Williams fail as a matter of law because Title VII does not impose liability on individual employees. As the Fifth Circuit explained:

> [T]here is no individual liability for employees under Title VII. While Title VII's definition of the term employer includes 'any agent' of an employer, Congress's purpose was merely to import *respondeat superior* liability into Title VII. Further, a plaintiff is not entitled to maintain a Title VII action against both an employer and its agent in an official capacity. Under the reasoning of our case law interpreting Title VII, the individual Defendants cannot be liable to [Plaintiff] in their individual or official capacities.

*Smith v. Amedisys Inc.*, 298 F.3d 434, 448–49 (5th Cir. 2002) (citations omitted). Thus, amendment cannot cure the deficiency in these claims, and Plaintiff's Title VII claims against Williams are dismissed with prejudice.

**B.      Plaintiff's wrongful termination claim fails as a matter of law.**

Construed generously,[32] Plaintiff intends to bring a wrongful termination claim for  disparate treatment claim under Title VII. Plaintiff must allege that Defendants took the adverse employment against him because of his protected status. *See Raj v. Louisiana State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013); *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514 (2002). Plaintiff affirmatively alleged, however, that Defendants  "wrongfully terminated Plaintiff on the basis of retaliation and fabricated misconduct."[33] The record is devoid of any factual allegations indicating that the termination was based on race.  Thus, this claim fails as a matter of law.

**C.      Plaintiff fails to state a claim of severe or pervasive harassment.**

Plaintiff also claims that he was subject to a hostile work environment.[34] "[T]o state a Title VII hostile work environment claim, Plaintiff was required to allege [] that the complained-of harassment was based on his race, color, religion, sex, or national origin." *Pitts v. Waffle House, Inc.*, No. 23-60436, 2024 WL 1904556, at *2 (5th Cir. May 1, 2024) (citations omitted). "In determining whether a workplace constitutes a hostile work environment, courts must consider the following circumstances: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it

---

[32] There is no federal or state cause of action for mere wrongful termination—i.e., termination that reflects the wrong decision. Rather, a termination-based claim must relate to, e.g., a plaintiff's protected status.
[33] *Id.* at 13.
[34] *Id.* at 14.

unreasonably interferes with an employee's work performance." *Whitlock v. Lazer Spot, Inc.*, 657 F. App'x 284, 287 (5th Cir. 2016) (citations and quotations omitted). "[T]o constitute a hostile work environment claim, the unlawful employment practice must have occurred over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Id.* (citations and quotations omitted).

Plaintiff alleges that Williams poked him in the arm and made a race-based comment on September 5, 2023. Plaintiff did not become an LMG employee, however, until several months later. Thus, Plaintiff was not an employee at the time of the incident, and Defendants are not liable for it under Title VII or Section 1981.

Plaintiff also alleges that he was denied "on call" opportunities while coworkers of different races were not.[35] "Although the denial of overtime may be an adverse employment action to support a claim of discrimination, a workplace has been considered hostile only when it is 'permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Allen v. Potter*, 115 F. App'x 854, 860 (7th Cir. 2004) (holding that plaintiff failed to state a hostile environment claim based on specific denials of overtime) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002)). Thus, the single instance of

---

[35] *Id.* at 8.

alleged deprivation of on-call opportunities does not rise to the level of a hostile work environment claim.[36]

In his Amended Complaint, Plaintiff states that a woman asked Williams why he would work with "that White man" in reference to Plaintiff. According to Plaintiff, Williams replied that he did not know and that it was not his decision.[37] Even construing all inferences in Plaintiff's favor, this isolated incident cannot support a claim for hostile work environment. *See Hiner v. McHugh*, 546 F. App'x 401, 408 (5th Cir. 2013) (affirming that the allegation of a single race-based comment was not severe or pervasive enough to state a hostile work environment claim).

Plaintiff's complaint is otherwise devoid of allegations of harassment tied to Plaintiff's race. Accordingly, Plaintiff's hostile work environment claim fails as a matter of law.

### D.    Plaintiff fails to state a claim of retaliation.

According to Plaintiff, Defendants retaliated against him for asserting his housing rights and "opposing unlawful employment practices."[38] "To state a Title VII retaliation claim, Plaintiff was required to allege [] that he engaged in activity protected by Title VII, namely opposition to discrimination based on race, color, religion, sex, or national origin." *Pitts v. Waffle House, Inc.*, No. 23-60436, 2024 WL

---

[36] Plaintiff has not framed the alleged denial of on-call opportunities as the subject of a disparate treatment claim.
[37] *Id.* at 10.
[38] *Id.* at 13.

1904556, at *2 (5th Cir. May 1, 2024). Plaintiff reported a notice to vacate his apartment. There is no indication that Plaintiff's action was in opposition to discrimination. Plaintiff also alleges that he filed a charge of discrimination to the Equal Employment Opportunity Commission on August 6, 2024, but does not allege any retaliatory conduct past that date.[39] Accordingly, Plaintiff fails to state a retaliation claim.

E.     **Plaintiff fails to state a claim of housing discrimination under the Fair Housing Act.**

The Fair Housing Act (FHA), Title III of the Civil Rights Act of 1968, 42 U.S.C. § 3601, *et seq.*, prohibits discrimination in the rental of a dwelling based on race, color, religion, sex, familial status, or national origin. *See* 42 U.S.C. § 3604(a). "[B]oth disparate treatment claims (claims asserting discriminatory intent or motive) and disparate impact claims (claims asserting an unjustified, disproportionally adverse effect on minorities) are cognizable under the FHA." *See Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 901 (5th Cir. 2019) (quotations and citations omitted).

As the Fifth Circuit has explained:

Disparate treatment is deliberate discrimination. It refers to treating some people less favorably than others because of a protected trait. Such discrimination is shown by evidence of discriminatory action or by inferences from the fact of differences in treatment. With discriminatory treatment claims, there can be no liability without a finding that the protected trait (*e.g.*, race) motivated the challenged action…. In the

---

[39] Plaintiff's employment with LMG ended almost six months earlier, on March 11, 2024.

absence of direct evidence of discrimination, the plaintiff must allege facts supporting a prima facie case of (1) membership in protected class, (2) that the plaintiff applied and was qualified to rent or purchase housing; (3) that the plaintiff was rejected, and (4) that the housing thereafter remained open to similarly situated applicants after the plaintiff was rejected.

*Id.* at 909–10 (quotations and citations omitted).

The Amended Complaint does not contain any allegations supporting a prima facie case of housing discrimination. Plaintiff alleges that LMG denied him housing because he failed a background check. After he requested housing again, LMG granted Plaintiff permission to move into an apartment within the same month.

Defendants also allegedly evicted Plaintiff from his apartment. "The Fifth Circuit [] noted § 3604(a) may extend to eviction." *Treece v. Perrier Condo. Owners Ass'n, Inc.*, 593 F. Supp. 3d 422, 438 (E.D. La. 2022) (citing *Cox v. City of Dallas, Tex.*, 430 F.3d 734, 742 (5th Cir. 2005)). But the facts in the Amended Complaint do not create a "reasonable inference" that Plaintiff's protected trait was a significant motivating factor in his eviction. *See Simms v. First Gibraltar Bank*, 83 F.3d 1546, 1556 (5th Cir. 1996). Thus, Plaintiff fails to state a disparate treatment claim under the FHA.

### F.    Plaintiff fails to state a claim of fraud.

Plaintiff also asserts a claim of fraud based on "forgery and submission of false evidence." Under Louisiana law, fraud is defined as a "misrepresentation or suppression of the truth made with the intention to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." La. Civ. Code art. 1953. To

11

state a claim of fraud, the plaintiff must allege "(1) a misstatement or omission; (2) of material fact; (3) made with the intent to defraud; (4) on which the plaintiff relied; and (5) which proximately caused the plaintiff's injury." *Williams v. WMX Techs.*, 112 F.3d 175, 177 (5th Cir.1997) (citing *Cyrak v. Lemon*, 919 F.2d 320 (5th Cir. 1990)). Plaintiff has not alleged that he relied on a misstatement or that his reliance caused an injury. Thus, this claim also fails.

## IV.    Conclusion

For the reasons set forth above, Plaintiff's Amended Complaint fails as a matter of law. "Ordinarily, a pro se litigant should be offered an opportunity to amend his complaint before it is dismissed." *See Wiggins v. Louisiana St. Univ.-Health Care Services Division*, 710 F. App'x 625, 627 (5th Cir. 2017) (internal quotation marks omitted). Although Plaintiff has amended his complaint already, he did so before the instant ruling clarifying the deficiencies in his pleadings. It is unclear whether Plaintiff can allege any additional facts that would support a viable claim. Nonetheless, given that Plaintiff's amendment occurred before Defendants' motion identified the deficiencies in his complaint, the Court will allow Plaintiff one **<u>final</u>** opportunity to amend those claims for which adequate facts have not been alleged.

Accordingly,

**IT IS ORDERED** that the Motion (R. Doc. 44) is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's Title VII claims against Derrick Williams are **DISMISSED WITH PREJUDICE.**

12

**IT IS FURTHER ORDERED** that Plaintiff's remaining claims are **DISMISSED WITHOUT PREJUDICE** to Plaintiff's right to amend his Complaint to address, if he can, the deficiencies identified herein.

**IT IS FURTHER ORDERED** that, should Plaintiff choose to file a Second Amended Complaint, he do so no later than **Thursday, August 6, 2026.**

New Orleans, Louisiana, this 16th day of July, 2026.

_____

EVA J. DOSSIER
UNITED STATES MAGISTRATE JUDGE
